BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF WELD, State of Colorado; Adolph Coors Company, a Colorado corporation; and Coors Energy Company, a Colorado corporation, Plaintiffs-Appellants,

v.

The DEPARTMENT OF LOCAL AFFAIRS OF the STATE OF COLORADO; Paula Herzmark, Executive Director of the Department of Local Affairs; the Energy Impact Assistance Advisory Committee; Paula Herzmark; Roy Brubaker; Chips Berry; Harvey Atchison; Gene Aiello; Bill Brennan; Ken Oakleaf; Ira McKeever; and Harley Jackson, individual members of the Energy Impact Assistance Advisory Committee, Defendants-Appellees.

No. 84CA1262.

Colorado Court of Appeals, Div. II.

May 22, 1986.

Rehearing Denied June 19, 1986.

Certiorari Denied (Board) Dec. 2, 1986.

No Appearance for plaintiff-appellant Bd. of County Com'rs of the County of Weld.

Bradley, Campbell & Carney, P.C., Victor F. Boog, Golden, for plaintiffs-appellants Adolph Coors Co. and Coors Energy Co.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Cheryl J. Hanson, Asst. Atty. Gen., Denver, for defendants-appellees.

STERNBERG, Judge.

Adolph Coors Company, Coors Energy Company, and The Weld County Board of County Commissioners (plaintiffs), appeal from a judgment rendered in favor of defendants, The Department of Local Affairs of the State of Colorado (Department), Paula Herzmark, formerly its executive director (Director), and members of the Energy Impact Assistance Advisory Committee (Committee), named individually. We affirm.

This case turns upon construction of Colo.Sess.Laws 1980, ch. 163, § 39–29–107.5(2)(b) at 740. Section 39–29–107.5, a frequently amended statute, was enacted in order to alleviate so-called "front-end costs" incurred by local governments because of the population and facility-use impact of energy-related development on local communities. The provision encourages companies to work with local government

in planning expansion and/or creation of facilities to serve areas thought likely to be impacted by future development. An enterprise may contribute property or services to be used to establish such facilities, and, when and if the project becomes operational, recover the amount of the contribution in the form of a severance tax credit. *Hearing on H.B. 1523 before the Colorado House Finance Committee*, 52nd General Assembly, 1st Session, March 22, 1979; *Hearings on H.B. 1523 before the Colorado Senate Finance Committee*, 52nd General Assembly, 1st Session, April 19, 1979. Such a plan, when executed as a formal agreement, is then submitted to the Committee for evaluation.

In December 1980, plaintiffs submitted a joint application for a severance tax credit against $905,208 contributed by Coors for the paving of two Weld County roads that service a coal mine owned by Coors. The Committee approved the contribution and recommended that it be certified as eligible for severance tax credit. The Director, however, determined that Coors' contribution was not appropriate for credit, and disapproved it.

Plaintiffs sought review of this decision in the district court, arguing that the then-effective § 39–29–107.5(2)(b) did not allow the executive director to approve or disapprove applications as a matter of discretion; rather, it was argued that the decision-making function was placed with the Committee and the role of the executive director was intended to be entirely ministerial. The trial court determined that the statute was ambiguous as to this question and, after considering relevant legislative history, concluded that it should be construed so as to place the power of final approval or disapproval with the executive director. This appeal ensued.

## I.

■ The provision in question reads, in pertinent part, as follows:

"In order to qualify as an approved contribution for credit, the following requirements shall be fulfilled:

.  .  .  .  .

"Each contribution must be acted upon for credit, within ninety days after joint submission by the taxpayer and the unit of local government, or local unit of government locally impacted, by the executive director of the department of local affairs upon the recommendation of the energy impact assistance advisory committee created by section 39–29–110(2)(a), and failure to act upon the eligibility within said ninety days shall be deemed as approval of the contribution. . . ."

Colo.Sess.Laws 1980, ch. 163, § 39–29–107.-5(2)(b) at 740 (incorporating amendments proposed in S.B. 51).

The issue for resolution is thus whether the quoted language mandates approval by the executive director after approval by the Committee, or whether it allows for discretionary approval or rejection by the executive director after Committee action.

In this regard, we read this language as susceptible to several interpretations. The word "must," for instance, may be taken either as requiring that action be taken within the ninety-day period or as requiring approval by the director of the contribution. The phrase "acted upon for credit" when read in conjunction with the phrase "upon the recommendation" could mean either that the executive director is bound to give credit if the Committee so advises or that a contribution must be approved first by the Committee and then by the executive director before credit is granted. "Recommendation" could mean "advice that the executive director approve," or "advice that the executive director consider," a contribution. These examples suffice to demonstrate that the provision may be read to say that the executive director either must acquiesce in the result recommended by the Committee or that the director may act in contradiction to any such recommendation.

We conclude, therefore, that the subsection is facially ambiguous. This being the case, we may utilize extrinsic aids to con-

struction as provided by statute. *See* § 2–4–203, C.R.S. (1980 Repl.Vol. 1B).

 Legislative history is determinative here. When the bill proposing the 1980 amendments was before the House Finance Committee, an amendment to the amendment was put forward. This amendment, by express statement of its sponsor, was intended to place final decision making power in the Committee. The amendment was opposed on the basis that the Committee should have powers only to recommend. Discussion concluded in general agreement, acknowledged by the sponsor, that the form of the bill as proposed without his amendment provided only an advisory role for the Committee and placed with the executive director the final power of passing on eligibility. *Hearings on S.B. 51 before the Colorado House Finance Committee*, 52nd General Assembly, 2nd Session, March 3, 1980. The bill as ultimately enacted did not include this amendment. We conclude, therefore, that under the provision at issue here, the Director was vested with discretion to approve or disapprove contributions referred to her by the Committee.

## II.

The only remaining question is whether the Director abused her discretion in disapproving plaintiffs' contribution agreement. We conclude that she did not.

As grounds for disapproval, the Director stated that the amount requested for credit was excessive, that the road construction project primarily benefited Coors, and that there was no energy development-related population growth in Weld County which would justify depriving a statutorily established distributive fund of severance tax monies represented by the contribution. There is sufficient evidence in the administrative record to support these conclusions.

Plaintiffs' agreement states that the contribution was required as a condition to a special use permit sought by Coors. The grounds relied upon are stated in policy documents which guide distribution of severance tax monies to impacted state and local areas. Although a prior application for grant funds stated that $480,000 was required to develop the roads so that they could support mine operations, over $900,000 was requested for approval for tax credit. Department staff documents executed following review of the prior application stated that industry would be the only beneficiary of the proposed project and recommended against allocation of grant monies. These circumstances demonstrate that the Director did not abuse her discretion in disapproving plaintiffs' contribution agreement.

The judgment is affirmed.

SMITH and BABCOCK, JJ., concur.